Jessie L. McCRAY, Individually and on behalf of a class of persons similarly situated, Plaintiffs,

v.

STANDARD OIL COMPANY (INDIANA), Defendant.

No. 76 C 3438.

United States District Court, N. D. Illinois, E. D.

Nov. 3, 1977.

Ernest T. Rossiello, Chicago, Ill., for plaintiffs.

James W. Gladden, Jr., Stuart Bernstein and Barry A. White, Mayer, Brown & Platt, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MARSHALL, District Judge.

By her second amended complaint, the plaintiff Jessie L. McCray seeks damages and declaratory and injunctive relief on behalf of herself and a group of employees similarly situated to redress deprivation of rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, by 42 U.S.C. § 1981, and by the Equal Pay Act of 1963, 29 U.S.C. § 201 *et seq.* The defendant is Standard Oil Company of Indiana (Standard).

Plaintiff, a black female, was employed as an administrative support secretary in the defendant's main Chicago office from September 17, 1969 until March 31, 1975, when she was discharged. She filed complaints with the Illinois Fair Employment Practices Commission (FEPC) and the Equal Employment Opportunity Commission (EEOC) charging Standard with racial discrimination in reprimanding her for conduct which her white coworkers practiced without censure, in eliminating her position, and in failing to promote her or transfer her to a new job. Neither commission found reasonable cause to support the charges. Plaintiff received her right to sue letter from the EEOC on June 21, 1976 and filed a timely *pro se* complaint in this court on September 16, 1976.

On October 27, 1976, court-appointed counsel filed an amended complaint under Title VII alleging that her supervisor at Standard intentionally discriminated against her on the basis of race by harassing her with threats of prospective discharge, by phasing out her job without lawful justification, by arranging numerous intracorporate interviews as a "transparent ruse" to create the impression of maintaining her employment, and by then discharging her when the interviews were unproductive. In addition, the amended complaint alleged that after plaintiff's discharge Standard continued its discriminatory practices by refusing to recommend her to prospective employers and by telling them she had been fired rather than informing them that her job had been eliminated. Plaintiff sought injunctive relief, reinstatement, back pay, costs, attorneys' fees, and $10,000 in punitive damages.

On February 25, 1977 plaintiff filed a second amended complaint which substantially expanded the scope of her suit. She introduced fresh allegations that defendant had violated 42 U.S.C. § 1981 and the Equal Pay Act, and had discriminated on the basis of sex, national origin and religion as well as race. The suit metamorphosed from an individual to a class action, with plaintiff seeking to represent all present, past and future female Standard employees or potential female employees on a nationwide

basis. The dimensions of the challenged employment practices also swelled. Plaintiff now attacked Standard's policies and practices on an across-the-board basis, including recruitment, hiring, promotion, transfer, wages, job classification, job assignments, lay off, recall and training. Commensurate with this quantum leap in alleged discriminatory conduct, plaintiff's prayer for relief has expanded and now demands comprehensive injunctive and declaratory relief, one million dollars in compensatory damages for mental distress, and a half million dollars in punitive damages. For the first time, a jury trial is demanded.

Subsequently, we granted plaintiff's motion to dismiss allegations of her complaint relating to religious discrimination and violations of the Equal Pay Act. This deletion left plaintiff's § 1981 claim and her Title VII claim of racial, sex and national origin discrimination outstanding. Pending for decision are plaintiff's motion for class certification and defendant's motion to dismiss or in the alternative strike certain allegations of the second amended complaint. In its motion, Standard argues that the complaint fails the specificity standards of Rule 8(a)(2), *Fed.R.Civ.P.*, impermissibly exceeds the scope of the charges plaintiff raised before the FEPC and the EEOC, falls far short of meeting Rule 23's class action requirements, asks for compensatory and punitive damages which cannot be recovered in such actions, and contains no issues which would give rise to a right to a jury trial.

Although Standard's attack on the complaint applies a number of legal theories, these challenges are merely different arrows directed at the same target. Standard believes plaintiff's second amended complaint is overbroad and seeks to limit its scope to her individual claim of racial discrimination under Title VII. Standard does not challenge the procedural sufficiency of this individual claim, but objects strenuously to any broadly-based "fishing expedition" into other types or instances of discriminatory employment practices.

Our first problem is determining the order of deciding the issues raised by the motions. When presented with a motion for class certification and a motion directed to the merits, the court should generally resolve the class issue first. *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 353 (7th Cir. 1975). The purpose of this rule is to preserve the purely procedural character of a determination on the maintainability of a class action. Plaintiff should not be prematurely excluded as a class representative because she cannot succeed on the merits of her individual claim or because her claim does not state a cause of action. However, the distinction between a motion which does and does not touch the merits is an elusive one. Courts which have applied the rule to condemn a preliminary judicial inquiry seem to be primarily concerned with a premature evidentiary hearing into the likelihood of plaintiff's ultimate success in the lawsuit. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Huff v. N. D. Cass Co. of Alabama*, 485 F.2d 710 (5th Cir. 1973). Here defendant's motion to dismiss, while focusing on the disposal of plaintiff's claims at an early juncture, is not based on factual matters beyond the face of the pleadings. It raises purely legal questions concerning the facial sufficiency of the allegations as judged by Rule 8 standards, the scope of the complaint as compared to the EEOC charges, and the appropriateness of a jury trial and monetary relief. The resolution of these issues prior to class certification may restrict the size of the class and the scope of the relief, but it does not prejudice our evaluation of plaintiff's capabilities as a class representative or the merit of her underlying claim of discrimination. To some extent, the court must be able to define the legal framework of the complaint—jurisdiction, the statutory and constitutional foundation, and the parameters of the challenged conduct—in order to be able to even apply the requirements of Rule 23. Hence, we will first consider defendant's arguments concerning Rule 8(a)(2) and the scope of the EEOC charges before reaching the motion for class certification.

Rule 8(a)(2) requires any pleading which sets forth a claim to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Standard contends that paragraph 11 of plaintiff's complaint contains vague and conclusory allegations which should be stricken as violative of this requirement. Paragraph 11 sets forth a lengthy list of charges of systematic class discrimination in a wide variety of employment practices. It is the foundation of plaintiff's class action claim. The paragraph states:

11. The discriminatory practices include, but are not limited to, the following:

a) Maintaining job classifications segregated on the basis of race, color and sex;

b) Failing to recruit, promote and hire female negroes because of their race and sex;

c) Failing to transfer and promote qualified female employees because of their sex;

d) Failing to transfer and promote qualified negro employees because of their race;

e) Maintaining policies and practices with respect, but not limited to, wages, job assignments and other terms and conditions of employment which unlawfully operate to deny equal opportunities to females because of their sex;

f) Maintaining policies and practices with respect, but not limited to, wages, lay off, recall, job assignments and other terms and conditions of employment which unlawfully operate to deny equal opportunities to women because of their race and color;

g) Maintaining policies and practices which utilize subjective, non-job related hiring and promotion criteria, which criteria operate to disparate [sic] and adversely affect negroes because of their race, and any other minority or protected class because of race, color, religion, national origin or sex;

h) Failing and refusing to pay females on an equal basis with men for substantially equal work;

i) Failing and refusing to provide training for females because of their sex for positions for which sex is not a bona fide occupational qualification;

j) Failing and refusing to take affirmative action to correct the effects of the discriminatory policies and practices complained of herein.

■ As plaintiff admits, these allegations are "catholic in scope." They question virtually every facet of Standard's operations. We do not believe, however, that the complaint sinks beneath Rule 8 standards. The office of the complaint is to show the type of case brought and to give the defendant fair notice of the alleged wrongs. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint here includes every element necessary to show a violation of Title VII and 42 U.S.C. § 1981. There can be no doubt that Standard has notice of the character of the claims asserted.

■ Standard's real argument is that the complaint asks the company to investigate a wide range of employment practices and to evaluate discrimination on every conceivable basis, with few guideposts to help it pinpoint exactly which policies or procedures are under attack. In short, the complaint resembles "a shotgun blast fired while leaning out a window." *EEOC v. D. H. Holmes Co., Ltd.*, 556 F.2d 787, 796 n. 14 (5th Cir. 1977). Nevertheless, to complete this metaphor, we believe Rule 8 only requires the complaint to describe the direction in which the gun is pointed, and not to detail the area of impact. The pleadings are not designed to carry the burden of formulating the issues and advising the adverse party of the facts involved. Depositions and discovery procedures perform that function. 2A Moore's Federal Practice ¶ 8.13 (2d ed. 1977).

■ Defendant relies primarily on *Ogletree v. McNamara*, 449 F.2d 93 (6th Cir. 1971) in which the court held that a broad allegation of "systemative racially discriminatory employment" must be supported by

facts as to when, how, to whom and with what results such discrimination has been applied. 449 F.2d at 98. Although this standard would render insufficient the complaint before us, we believe the court's reasoning reflects discarded notions that a complaint must "allege facts as opposed to generalities and conclusions." *Id.* The Supreme Court in *Conley* specifically rejected the argument that a complaint must set forth specific facts to support its general allegations of discrimination. 355 U.S. at 47, 78 S.Ct. 99. The better view is that a Title VII complaint is sufficient if it alleges fundamental facts reflecting a pattern or practice of racial discrimination. *United States v. Gustin-Bacon Div. Certain-Teed Products,* 426 F.2d 539, 543 (10th Cir. 1970). The complaint in this case meets those standards. Defendant's motion to dismiss or strike the class-based allegations of the complaint is denied.

Standard next argues that the scope of the second amended complaint must be narrowed because it raises grounds which were not first presented to the EEOC. Standard contends that the complaint cannot properly add new types of discrimination (sex, national origin, and religion), new statutory violations (§ 1981 and the Equal Pay Act), or new acts of discrimination (recruitment, hiring, training, wages, etc.). Standard would have us limit the complaint to plaintiff's Title VII claims of racial discrimination which are connected with her discharge from her employment.

Plaintiff has voluntarily limited the breadth of her complaint by dismissing her claims of religious discrimination and Equal Pay Act violations. And § 1981 is available to redress racial discrimination even if the Title VII claim is impermissibly broad in light of the EEOC charges. *Jenkins v. Blue Cross Mutual Hospital Ins., Inc.,* 522 F.2d 1235 (7th Cir. 1975), *rev'd en banc on other grounds,* 538 F.2d 164 (1976). However, § 1981 is limited to discrimination based on race. Therefore, defendant's attack is reduced to a challenge to the allegations of sex and national origin discrimination, and the inclusion of new acts of discrimination on an across-the-board basis.

The general rule is that a judicial complaint in a Title VII action may encompass "any discrimination like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Jenkins, supra,* 538 F.2d at 167. This rule seeks to insure that the EEOC's voluntary conciliation procedures will be invoked before a federal suit is filed. The administrative scheme would be frustrated if a claimant could settle a narrow EEOC charge and then bring a broad attack against the same employer in federal court. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970). This rule allows the scope of the judicial complaint to extend to the scope of the EEOC investigation growing out of the charges. The breadth of this standard reflects the fact that an EEOC charge only triggers the agency's investigatory procedures and its efforts at voluntary compliance. If these efforts fail, a lawsuit may result. Hence, a subsequent civil action actually "grows out" of the EEOC investigation rather than the employee's specific charge.

The Seventh Circuit has indicated that the "like or related" test is to be very liberally applied. In *Jenkins, supra,* the claimant's EEOC charge only encompassed racial discrimination in promotional practices. Her judicial complaint, however, alleged a broad-based pattern of racial and sex discrimination in hiring, assignment, pay and promotion. The original panel held that the EEOC charges limited both the type of discrimination and the number of employment practices which could be challenged. On rehearing en banc, however, the Seventh Circuit reversed the panel in both respects, allowing plaintiff to proceed with a complaint alleging a pattern of race and sex discrimination in a host of employment practices. According to the court, since the charge contained language that the claimant had been accused of being "a leader of girls on the floor" and had associated with a white female who had also been denied a promotion, the charges of racial discrimination impliedly included charges of

sex discrimination as well. In addition, in allowing the suit to encompass pattern or practice charges, the court stated that "a single charge may 'launch a full scale inquiry' into racial discrimination." 538 F.2d at 168. Thus, the court has read the relatedness requirement very broadly, and will permit inference of other types of forbidden discrimination based on emanations from the factual allegations of the EEOC charges.

■ Despite this liberal test, we cannot read plaintiff's FEPC and EEOC charges as containing any reference to discrimination on the basis of sex or national origin. The complete text of those charges reads as follows:

> I was discriminated against by the above company because of my race (black) in that 1) in my dept. which has only 3 blacks out of 100 employees, my position is the only one being eliminated; 2) a promotion was given to a white woman even though I had more experience in doing the work & 3) I have received reprimands for offenses for which white employees have not.

This language provides no basis for implying a charge of sex discrimination. In *Jenkins*, the black claimant implicated that a white female coworker was similarly burdened by the employer's promotional policy. By contrast, the plaintiff here alleged that the promotional policy which burdened black females operated to *benefit* white females. The discriminatory basis is purely racial. Furthermore, a reading of the FEPC investigatory report reveals that the "white employees" receiving fewer reprimands are other white *female* secretaries. The report also analyzes the composition of the company's work force, its hiring statistics, and its promotional policies in purely racial terms, noting that 17 of the 20 jobs which were phased out were held by whites, and that 6 of the 16 new hirees were black. Neither the EEOC complaint nor the investigatory report contains any suggestion of sexual discrimination. Nor do they contain any inkling of discrimination on the basis of national origin or any other forbidden criteria.

■ The issue thus becomes whether the charges or the investigation support an across-the-board nationwide attack upon racial discrimination in Standard's employment practices. If plaintiff's charges of racial discrimination had arisen solely under Title VII, we would find it difficult to sustain a comprehensive national inquiry, since the EEOC charges and investigation extended to only one territorial zone of Standard's national operations. *See Evans v. Frito-Lay, Inc.*, 7 FEP Cases 675 (N.D. Ohio 1974). However, because plaintiff has also claimed the protection of § 1981, and because Title VII creates no procedural barriers to § 1981 actions, we cannot limit the geographic scope of the complaint on this basis. *Jenkins, supra*, 538 F.2d at 166. Therefore we grant defendant's motion to strike the allegations of the complaint referring to discrimination on the basis of sex, national origin or any other unspecified and forbidden criteria, but deny it in all other respects.

Plaintiff seeks to certify a broadly-defined class of past, present and future Standard employees. However, we have considerable doubt as to just what class plaintiff purports to represent. Paragraph 7 of the complaint defines the class as consisting of:

> female persons who are now, have been, might have been or might become employed by the company at its plants and offices since March 31, 1975, and who have been, and continue to be or might be adversely affected by the practices complained of herein. . . . [T]he members of this class . . . are, were and continue to be limited, classified and discriminated against in ways which deprive them of equal employment opportunities and otherwise adversely affect their status as employees or union members because of their race, sex, religion or national origin.

The complaint only alleges the existence of a subdivision (b)(2) class. In comparison, plaintiff's supporting memorandum invokes subdivision (b)(2) and (b)(3), and seeks to represent a narrower class composed of:

all black females who are now employed, were employed, might have been employed or might in the future be employed by the defendant [and] . . . whose employment opportunities were, are now, or may be limited, classified, or subjected to adverse discrimination on the basis of race and sex.

The streamlined scope of this second definition partially reflects plaintiff's decision to delete claims of religious discrimination from her complaint. It also more closely conforms to our holding that the complaint should be limited to allegations of racial discrimination.

Besides the definitional problem, plaintiff's indecisiveness concerning which subdivision of Rule 23(b) to invoke also complicates our task. In any event, we cannot make an intelligent selection of the class definition or the proper subdivision at this stage of the proceedings. Nor can we assess the maintainability of a class action in terms of the four standards set forth in Rule 23(a). The record consists solely of bare allegations in the pleadings. Those allegations are little more than a paraphrasing of Rule 23's language. The only specific factual allegations in the complaint relate to plaintiff's individualized grievance arising from her discharge. There are no specifications of grievances by other members of the class. Indeed, plaintiff cannot name one other person who fits within either of her class definitions.

Seizing upon these weaknesses, defendant urges us to strike the class action allegations. Standard argues at length that no concrete, identifiable class of discriminatees even exists, that the complaint is essentially a solitary grievance couched in conclusory class action language, and that plaintiff has presented no factual basis for establishing the requisite commonality or typicality of claims or for establishing her status as an adequate representative of the class.

We believe defendant's arguments are premature and tend to prejudge the merits of plaintiff's claims. Although plaintiff admits that she has not satisfied her burden of producing facts sufficient to satisfy Rule 23 standards, a decision on the maintainability of a class action need not be finally settled at this time. Maintainability may sometimes be determined on the basis of the pleadings, but ordinarily the determination should be predicated on more information than the pleadings will provide. *Weathers v. Peters Realty Corporation*, 499 F.2d 1197, 1200 (6th Cir. 1974). The parties should have an opportunity to engage in discovery relating to the issues involved in maintainability. Many courts have recognized the propriety of allowing discovery or evidentiary hearings before deciding the class certification issue. *See Doctor v. Seaboard Coast Line Railroad Co.*, 540 F.2d 699, 707 (4th Cir. 1976) and cases cited therein. Although Rule 23(c)(1) provides for class action determinations "as soon as practicable," the court is given the discretion to grant conditional certification or to defer certification pending discovery.

The difficult problem lies in defining the scope of the discovery procedure. On the one hand we are confronted with plaintiff's contentions that employment discrimination is often by its very nature manifested as class discrimination, that racial discrimination is a particularly virulent form of employment discrimination, and that the class action device is to be flexibly and liberally applied. *Huff v. N. D. Cass Co. of Alabama*, 485 F.2d 710, 713 (5th Cir. 1973); *Yaffee v. Powers*, 454 F.2d 1362, 1365 (1st Cir. 1972). In addition, we are encouraged to make evidentiary inquiries which range beyond the face of the complaint. *Id.* On the other hand, Standard urges that a class action is properly denied if the complaint is merely a single instance of racial discrimination couched in loosely-defined class-wide allegations, *Pittman v. Anaconda Wire & Cable Co.*, 408 F.Supp. 286, 295 (E.D.N.C. 1976), and that it is an abuse of discovery procedures for plaintiff to inflate her individual claims into a license to conduct a "fishing expedition" into Standard's employment practices on an across-the-board basis. In the words of Judge Godbold, when the complaint does "no more than name the preserve on which [plaintiff] in-

tends to hunt," the employer will not know how to defend the lawsuit and will be burdened with interrogatories challenging every aspect of his business. *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1126 (5th Cir. 1969). Furthermore, there is a danger in delving too far into the merits of a case prior to a class action determination. *Eisen v. Carlisle & Jacquelin, supra.*

To alleviate these conflicting policies, we believe the best course combines a deferral of class certification with limitations on the temporal and transactional framework of the discovery process. The basic dispute at this stage centers around whether a class of racial discriminatees even exists. Plaintiff believes that the circumstances surrounding her claim of individual discrimination implicate companywide misconduct but is unable to presently discern any other members of the class. Standard thinks plaintiff's case is unique. We agree with the First Circuit in *Yaffee v. Powers, supra*, 454 F.2d at 1366, that:

> To pronounce finally, prior to allowing any discovery, the nonexistence of a class or set of subclasses, when their existence may depend on information wholly within 'defendants' ken, seems precipitate and contrary to the pragmatic spirit of Rule 23. Evidence which might be forthcoming might well shed light on a final decision on this issue.

*See also Kamm v. California City Development Co.*, 509 F.2d 205, 210 (9th Cir. 1975). Therefore we will allow plaintiff to conduct discovery directed toward identifying the existence of a class of female Standard employees who have suffered racial discrimination in employment practices.

In applying these discovery procedures to define a (b)(2) class, plaintiff need not identify each member or precisely delimit the actual membership of the class. Subdivision (b)(2) was designed to encompass classes in which the members cannot be specifically enumerated, and to simplify "across the board" demands for injunctive

relief in civil rights cases. *Grogan v. American Brands, Inc.*, 70 F.R.D. 579, 583 (M.D. N.C.1976). However, if plaintiff desires to maintain a (b)(3) class action, the class may need to be more narrowly confined, especially if monetary damages are sought, since the evidence as to individual claims may vary widely in scope and character. *Weathers v. Peters Realty Corporation*, 499 F.2d 1197, 1200 (6th Cir. 1974).

To balance plaintiff's reasonable discovery demands with defendant's burden of producing extensive documents and records we will require plaintiff to confine her requests to the past five years, to employment decisions, policies and practices emanating from Standard's Chicago headquarters where plaintiff was employed, and to transactions involving black female employees who may have been subjected to racial discrimination. This limitation is not an absolute or an unreviewable one. If discovery should reveal that policies of racial discrimination may have their roots further in the past, or are the product of pervasive personnel policies on a corporation-wide level, we will entertain a request to modify the scope of the order. Conversely, if plaintiff's demands become too burdensome, defendant may move for a modification or a protective order. In any event, plaintiff's discovery efforts should be completed within 90 days, at which time we will reconsider the motion for class certification.[1] At that time plaintiff should present a tightly constructed definition of the class, if any, she proposes to represent, a designation of whether a (b)(2) or a (b)(3) class (or both) is desired, and factual material directed to each of the four requirements in Rule 23(a).

Standard next argues that plaintiff's demand for compensatory and punitive damages should be stricken. The majority of the courts have held that compensatory and punitive damages are not recoverable in a Title VII suit. *See Richerson v. Jones*, 551 F.2d 918, 926 (3d Cir. 1977)

---

1. Until the court has ruled that an action can not continue as a class action, it must be regarded as a class action if the pleadings so

provide. 3B Moore's Federal Practice, ¶ 23.50 at 23–1103 (2d ed. 1977).

and *Presseisen v. Swarthmore College,* 71 F.R.D. 34, 45 n. 12 (E.D.Pa.1976) and cases cited therein. The Seventh Circuit has expressly left this issue open. *Adams v. Brinegar,* 521 F.2d 129, 134 (7th Cir. 1975). We need not reach the question here, since plaintiff's complaint also states a claim under 42 U.S.C. § 1981.[2] Although Standard cites two cases for the proposition that a Title VII plaintiff may not use a § 1981 claim to enlarge his remedies beyond that authorized by Title VII, *EEOC v. Detroit Edison Co.,* 515 F.2d 301 (6th Cir. 1975) and *Howard v. Lockheed-Georgia Corp.,* 372 F.Supp. 854 (N.D.Ga.1974), those cases were both decided prior to the Supreme Court's decision in *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). There the Court held with unmistakable clarity that "the remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct and independent." 421 U.S. at 461, 95 S.Ct. at 1721. The Court emphasized that an aggrieved individual ". . . is not limited to Title VII in his search for relief" and that "an individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages." (id. at 459–60, 95 S.Ct. at 1720). At least one court of appeals has subsequently relied on *Johnson* to hold that an award of punitive damages is appropriate in a mixed Title VII–§ 1981 action. *Allen v. Amalgamated Transit Union Local 788,* 554 F.2d 876 (8th Cir. 1977). Therefore, defendant's motion to strike plaintiff's demand for compensatory and punitive damages is denied.

▉▉▉▉ Standard's final contention is that since courts have consistently found no right to a jury trial in Title VII actions, *see Slack v. Havens,* 522 F.2d 1091, 1094 (9th Cir. 1975), plaintiff's demand for a jury trial should be stricken. Title VII does not specifically authorize an award of legal damages. 42 U.S.C. § 2000e–5(g). Courts have characterized demands for back pay and reinstatement under the Act as part of an equitable remedy, a form of restitution. A jury trial is not required for equitable claims. In the present case, however, plaintiffs seeks compensatory and punitive damages under § 1981 in addition to Title VII equitable remedies. Section 1981 authorizes that form of legal relief. *Johnson v. Railway Express Agency, Inc., supra.* If a statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law, the right to a jury trial attaches. If the legal claims are joined with equitable claims, the right to a jury trial on the legal claim, including all issues common to both claims, remains intact. *Curtis v. Loether,* 415 U.S. 189, 194, 196, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). Although the Court in *Curtis* applied these principles to Title VIII of the Civil Rights Act, 42 U.S.C. § 3612, the Court held that the right to a jury trial attaches generally to actions enforcing statutory rights. Therefore defendant's motion to strike plaintiff's jury demand is denied.

In summary, defendant's motion to strike allegations of discrimination based on sex, national origin or any other unspecified and forbidden criterion from the second amended complaint is granted. In all other respects defendant's motion is denied. Plaintiff's motion for class certification is deferred pending discovery, subject to the limitations described above. Cause set for report on status January 27, 1978 at 9:30 a. m.

---

**2.** Standard argues that the complaint does not state a claim under § 1981 because the statute is only cited in the jurisdictional paragraph of the complaint and because there is no allegation Standard acted intentionally or with malice. These arguments are without merit. Rule 8 is not so inflexible as to require the perfect placement of statutory citations. Plaintiff has adequately pleaded a cause of action under § 1981 by stating that she was discharged from her employment because of her race, and the words "intentionally" and "maliciously" are both used to describe defendant's actions. Second Amended Complaint, ¶¶ 10, 13. *See Tramble v. Converters Ink Co.,* 343 F.Supp. 1350, 1352–53 (N.D.Ill.1972).