**TERRACE KNOLLS, INC., Plaintiff,**

**v.**

**DALTON, DALTON, LITTLE AND NEWPORT, INC., et al. Defendants.**

**Civ. A. No. C 80–534 A.**

United States District Court, N.D. Ohio, E.D.

Sept. 28, 1983.

Robert W. Blakemore, Akron, Ohio, for plaintiff.

Albert Biro and Daniel J. O'Loughlin, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Plaintiff Terrace Knolls, Inc. ("Knolls") sues officials of the Village of Silver Lake, Ohio and private consultants for conspiring to unjustly halt its development of a parcel of real estate. Alleging violations of the Fourteenth Amendment to the Constitution, 42 U.S.C. § 1983, and Ohio law, Knolls seeks compensatory and punitive damages and injunctive relief.

Before the Court is a Motion to Dismiss filed by defendants William Curry, Clyde Conn, Henry Dixon, and Gerald McElhaney ("Silver Lake defendants"). Defendant Dalton, Dalton, Little & Newport, Inc. ("Dalton"), in their answer to Knolls' complaint, have also prayed for dismissal. The Motion alleges that Knolls has failed to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Upon consideration of the pleadings and for the reasons set forth below, the Court finds the Motion meritorious and the complaint inadequate, and orders the action dismissed.

Jurisdiction over the federal claims is predicated on 28 U.S.C. §§ 1331, 1343. The Court has pendent jurisdiction over the state claims.

## FACTS

On July 5, 1977, the Silver Lake Village Council approved Knolls' plan to develop a parcel of land. At the time, defendant Curry was the village's clerk-treasurer, Conn was mayor, and Dixon and McElhaney were councilmen. The village engineer approved the development plan on November 1, 1977.

In 1979, Dalton, a consulting firm, was hired by the federal Department of Housing and Urban Development ("HUD") to survey and define the flood plain for lands in Silver Lake adjacent to the Cuyahoga

River. Knolls' parcel was among the lands to be affected by establishment of a flood plain.

Knolls accuses Dalton of negligently submitting erroneous data to HUD. Relying on the information, the department defined the flood plain for Knolls' land five to six feet higher than its true level. It submitted the findings to the village. The village subsequently enacted an ordinance restricting Knolls' development plans, refused to issue building permits, and denied the use of public streets for construction activities.

In Count I of its amended complaint, Knolls charges that Dalton and the Silver Lake defendants "engaged in a conspiracy . . . to unjustly halt, inhibit and interfere with the development of [its] land." Amended Complaint ¶ 11, at 5. Counts II and III allege that the public officials, "together and in their individual capacities," prevented Knolls from developing its property and thereby deprived it of civil rights under 42 U.S.C. § 1983 and due process and equal protection under the Fourteenth Amendment. Count IV alleges that the Dalton firm and the Silver Lake defendants, by publishing incorrect information about the flood plain level, damaged Knolls' reputation and diminished the marketability and value of the development property.

The Silver Lake defendants, in moving to dismiss the federal causes of action for failure to state a claim, argue that the complaint fails to specify any personal or official actions by the officials and fails to state any violations of the Fourteenth Amendment or § 1983. Since Counts I and IV are state law claims, under the doctrine of pendent jurisdiction they can only be heard if the federal issues are properly before the Court.

## LAW

### I. SUFFICIENCY OF THE COMPLAINT

■ The Silver Lake defendants deem the complaint inadequate under Fed.R. Civ.P. 8(a) for lack of specificity. They state that the complaint (1) alleges that the defendants acted together and individually but fails to allege a conspiracy; (2) accuses the officials of performing acts under color of law and authority of office yet sues them in both individual and official capacities; (3) fails to include HUD, which ordered the flood plain survey, as a defendant; and (4) lacks allegations respecting the powers and duties of the named defendants and fails to specify which defendant is responsible for any named act. Reviewing this argument, the Court notes first that Count I does allege a conspiracy between the Dalton firm and the Silver Lake defendants, and also that failure to name HUD as a defendant is irrelevant to a motion to dismiss for lack of specificity.

■ Defendants urge us to adhere to the strict pleading rules set forth for civil rights actions set forth in *Ogletree v. McNamara,* 449 F.2d 93, 98 (6th Cir.1971):

> . . . Liberal as are the federal rules of pleading, something more than conclusory allegation of systematic racial discrimination is required. Some facts as to when, how, to whom, and with what results such discrimination has been applied would seem a minimum required for "a short and plain statement of the grounds upon which the court's jurisdiction depends."

*Ogletree*'s requirement that a complaint "allege facts as opposed to generalities and conclusions" has been criticized as reflecting "discarded notions" favoring fact-pleading. *McCray v. Standard Oil Co. (Indiana),* 76 F.R.D. 490, 496–97 (N.D.Ill.1977); see *EEOC v. Stroh Brewery Co.,* 83 F.R.D. 17, 32 (E.D.Mich.1979). Complaints need not set forth specific facts to support general allegations of discrimination. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Moreover, as the Supreme Court wrote in *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974):

> . . . When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

▬ The complaint alleges that Knolls was discriminatorily prevented from developing its property. It puts the defendants on notice of the nature of Knolls' grievance and the grounds upon which it rests. No more is required under Fed.R.Civ.P. 8(a). *Linder v. Litton Systems, Inc., Amecom Division,* 81 F.R.D. 14 (D.Md.1978). "The court should remember that fundamental rights and important questions of public policy are involved in actions under the various civil rights statutes and should not dismiss the complaint unless it clearly is frivolous or fails to state a claim for relief." 5 Wright, Miller & Kane, *Federal Practice and Procedure:* Civil § 1230 (1969 & Supp. 1982).

The Motion to Dismiss for lack of specificity is denied.

## II. SUBSTANTIVE CLAIMS

### A. *Fourteenth Amendment*

▬ In Counts II and III, Knolls claims abridgement of its due process and equal protection rights and asserts an implied cause of action for damages directly under the Fourteenth Amendment, irrespective of statutory authorization.

The Supreme Court first permitted direct actions under the Bill of Rights for "constitutional torts" in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Bivens* permitted the victim of an illegal search and seizure to sue directly under the Fourth Amendment. Similar actions have been recognized under

the Fifth Amendment, *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Eighth Amendment. *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). The Court has not decided whether a direct cause of action exists under the Fourteenth Amendment. *Mt. Healthy School District Board of Education v. Doyle,* 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471 (1977). Nor has the Sixth Circuit recognized such an action. *Hall v. United States,* 704 F.2d 246, 249 n. 1 (6th Cir.1983).

This case does not require that we decide whether a Fourteenth Amendment *Bivens* action is viable. Knolls alleges causes of action under § 1983 precisely equivalent to its constitutional claims. Since Congress intended § 1983 to enforce the provisions of the Fourteenth Amendment, *Monroe v. Pape,* 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961), simultaneous claims under the two provisions have been regarded as inappropriate:

> . . . Indeed, § 1983 was designed to afford plaintiffs a cause of action for constitutional violations on the part of local governmental bodies and other state officials. . . . Therefore, it would be a redundant and wasteful use of judicial resources to permit the adjudication of both constitutional and § 1983 claims where the latter wholly subsume the former.

*Rogin v. Bensalem Township,* 616 F.2d 680, 686–87 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

Knolls' cause of action under the Fourteenth Amendment must be dismissed.

### B. *Section 1983*

The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.... '

■ A claim under § 1983 requires two elements: (1) conduct by defendants under color of state law; and (2) deprivation of plaintiff's constitutional rights because of that conduct. *Gearheart v. Federal Reserve Bank,* 516 F.2d 353, 354 (6th Cir.1975). That the Silver Lake defendants were acting under color of state statutes and village ordinances and regulations is not disputed.

■ Not every violation of a state constitutional, statutory or common law right necessarily infringes federal constitutional rights. *Snowden v. Hughes,* 321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944). Moreover, even if Knolls complains that federal constitutional rights were involved, the Silver Lake defendants as municipal officials possess "qualified immunity" and the plaintiff must allege intentional violation or reckless disregard of their rights. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Good faith immunity defeats § 1983 claims so long as official conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982).

### 1. Due Process

Knolls' due process claim is set forth in the following paragraphs of its complaint:

19. Said acts by defendants, Conn, Curry, Dixon and McElhaney, together and individually in their official capacities, in deprivation of plaintiff's civil rights include but are not limited to actions designed to prevent the issuance of building permits, the unlawful refusal to issue building permits, enacting an ordinance to modify the requirements of plaintiff's developmental plans, interference with construction activities by refusing use of public streets, and public and private representations having the effect of disrupting and preventing development, preventing the sale of proper-

ty and injuring the good name and reputation of plaintiff and its property.

20. These actions effectively revoked and rescinded the previously granted approval of plaintiff's developmental plan and did in so deprivation of plaintiff's Fourteenth Amendment due process rights.

21. The actions of the defendants, Curry, Conn, Dixon and McElhaney were taken in bad faith and in total disregard of the arguable scope of their statutory, administrative, judicial and legislative duties, responsibilities and powers.

22. That if said actions were within the scope of defendant's duties, responsibilities and powers, they were performed in an arbitrary and capricious manner, grossly abusing their lawful powers of office.

■ The Fourteenth Amendment protects rights that exist in the use of property. *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Lynch v. Household Finance Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). "Property" interests protected by the Constitution include the security of interests a person has already acquired in specific benefits. *Board of Regents v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). Due process principles entitle individuals to a fair hearing before being deprived of any property interests. *Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935 (1974). "Substantive due process" requires in addition that decisionmakers not act in a manner which is "wholly arbitrary or irrational." *Martinez v. California,* 444 U.S. 277, 282, 100 S.Ct. 553, 557, 62 L.Ed.2d 481 (1980).

Reading Knolls' complaint generously, as we must, its due process allegation can be analyzed under three categories: substantive due process, procedural due process, and taking without just compensation.

#### a. Substantive Due Process

■ The legislative ordinance regulating the Knolls development and the admin-

istrative decisions made with respect to building permits and access to public roads are analyzed under separate but similar standards. "The test for determining whether a law comports with substantive due process is whether the law is rationally related to a legitimate state interest." *Rogin v. Bensalem Township, supra,* 616 F.2d at 689. "[T]he law need not be in every respect consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical Co.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955).

The Silver Lake ordinance can best be analyzed under substantive due process decisions concerning zoning. As the Supreme Court wrote in *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981):

... Where property interests are adversely affected by zoning, the courts generally have emphasized the breadth of municipal power to control land use and have sustained the regulation if it is rationally related to legitimate state concerns and does not deprive the owner of economically viable use of his property.

Consequently, "a zoning ordinance that only affects property interests merely has to bear a rational relationship [to the general welfare].... [F]ederal court review of a zoning ordinance may only determine whether it is clearly arbitrary and unreasonable, in the very restricted sense that it has 'no substantial relation to the public health, safety, morals or general welfare.'" *Stratford v. State-House, Inc.,* 542 F.Supp. 1008, 1017 (E.D.Ky.1982), *quoting City of Lakeside v. Forest City Enterprises,* 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976).

Silver Lake has a reasonable and legitimate interest in regulating development in land subject to flooding. Clearly the ordinance was a rational means to accomplish a purpose within the police and welfare powers. That the ordinance may have been enacted because incorrect facts were submitted to the officials does not transform it into a violation of substantive due process.

*b. Procedural Due Process*

▪ Knolls' claim can also be read as an allegation that it was denied procedural due process. Knolls claims that the Silver Lake defendants acted "in bad faith and in total disregard of the arguable scope of their statutory, administrative, judicial and legislative duties, responsibilities and powers." Amended Complaint ¶ 21, at 4. Procedural due process requires that the discretion of the decision-maker be guided by suitable substantive and procedural standards. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *see generally,* 2 K. Davis, Administrative Law Treatise, § 7:26 (2d ed. 1979).

*Rogin v. Bensalem Township, supra,* 616 F.2d at 694, summarized the requirements of procedural due process:

Before a governmental body may deprive a landowner of a property interest, it must provide due process. The exact process required varies with the demands of the particular situation in question. A balancing test has been articulated by the Supreme Court to determine the requirements of due process for any given situation: the private interest affected by the governmental action and the value of additional procedural safeguards are to be weighed against the fiscal and administrative burdens that additional procedures would impose on the government. The Court had identified the following as elements of due process: (1) notice of the basis of the governmental action; (2) a neutral arbiter; (3) an opportunity to make an oral presentation; (4) a means of presenting evidence; (5) an opportunity to cross-examine witnesses or to respond to written evidence; (6) the right to be represented by counsel; and (7) a decision based on the record with a statement of reasons for the result. Whether all or any one of these safeguards are required in a particular situation depends

on the outcome of the balancing test mentioned above. (footnotes omitted).

■ Having presented this analytic scheme, the court found it inapplicable to the zoning dispute before it.

In order to resolve this appeal, it is not necessary to decide which procedural protections are mandated by due process in the present context. Rather, we hold that [plaintiff's] cross-claim, beyond making a general assertion of denial of due process, fails to allege that [defendant's] permit and appellate procedures were constitutionally deficient in any way.

Precisely the same thing can be said of Knolls' complaint. No colorable claim of denial of procedural due process has been made.

### c. Taking Without Just Compensation

■ One last interpretation of the due process allegations in Knolls' complaint is that even if the Silver Lake legislative and administrative action satisfy substantive and procedural due process, they nonetheless constitute a "taking" of private property without just compensation. The Fourteenth Amendment incorporates the Fifth Amendment requirement that a state cannot take private property without paying just compensation. *Chicago, B. & Q.R.R. v. Chicago,* 166 U.S. 226, 235–41, 17 S.Ct. 581, 584–86, 41 L.Ed. 979 (1897); *Rodgers v. Tolson,* 582 F.2d 315 (4th Cir.1978).

■ Since this dispute involves neither physical invasion nor permanent occupation of private property by a public authority, a plaintiff must allege a drastic degree of "diminution of value" in order to state a viable takings cause of action. *Penn Central Transportation Co. v. New York City, supra,* 438 U.S. at 131, 98 S.Ct. at 2662; *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). In zoning cases, public action has only been deemed a taking if it deprived an owner of all "economically viable use of his property" *Schad v. Borough of Mount Ephraim, supra,* 452 U.S. at 68, 101 S.Ct. at 2182. Neither deprivation of the most beneficial use of the land, *United States v. Central Eureka Mining Co.,* 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228 (1958), nor a severe decrease in the value of the property, *Goldblatt v. Hempstead,* 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962), measures up to an unlawful taking. *See Nasser v. City of Homewood,* 671 F.2d 432, 438 (11th Cir.1982); *Glassman v. Township of Falls,* 547 F.Supp. 362, 368 n. 11 (E.D.Pa.1982).

■ Since the complaint merely alleges an interference with Knolls' right to develop the land, but not a deprivation of all use of it, we hold that the complaint fails to state a cause of action for a "taking" under the Fourteenth Amendment.

### 2. Equal Protection

■ Paragraphs 26–28 in Count III of the amended complaint restate the arguments made in the due process count and insert, in cursory fashion, a claim that Knolls' Fourteenth Amendment equal protection rights have been violated:

26. As a result of the unlawful actions of defendants, Conn, Curry, Dixon and McElhaney, plaintiff has been and is being deprived of civil rights of liberty, property and equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States and further protected by 42 U.S.C. Section 1983.

27. Plaintiff has repeatedly attempted to obtain the preservation of its rights as protected by the Constitution of the United States.

28. Plaintiff has no adequate remedy at law to prevent further future violation and deprivation of its civil rights as protected by the Fourteenth Amendment to the Constitution of the United States and as further protected by 42 U.S.C. Section 1983.

Nothing in the complaint alleges a violation of the fundamental tenet of equal protection: that "all persons similarly situated shall be treated alike." *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561–62, 64 L.Ed. 989 (1920); *Plyler v.*

**1094**

Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Even if we read into the complaint an allegation that owners of property affected by the incorrect determination of the flood plain are the class subject to discrimination, neither a "fundamental interest" nor a "suspect classification" is invoked. The state's action would be upheld under the "rational relationship" test if defendants showed any "reasonable basis" for the classification. *Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Hooban v. Boling,* 503 F.2d 648, 650 (6th Cir. 1974). As noted above, legislative and administrative decisions regulating housing development in flood-prone areas are a rational means to further the legitimate state interest in public welfare and safety, and clearly survive any Fourteenth Amendment challenge. Furthermore, the mere allegation that the Silver Lake defendants took "unlawful action" does not satisfy the requirement that municipal officials must intentionally or recklessly violate clearly established statutory rights in order to lose their qualified immunity under *Owen v. City of Independence, supra.* We find that no equal protection claim has been alleged against the defendants.

The federal claims in Counts II and III of the amended complaint must be dismissed.

## C. Pendent State Claims

 Counts II and III of Knolls' complaint alleged violations of federal law. Having dismissed them, we must decide whether to exercise jurisdiction over the state claims filed against the Silver Lake defendants and the Dalton firm in Counts I and IV. Federal courts have the power to exercise pendent jurisdiction where the state and federal claims derive from a common nucleus of operative facts such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding, and when the federal claim has sufficient substance to confer subject matter jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d

218 (1966). Under *Gibbs,* a federal court may continue to hear the pendent state claims even if it dismisses the federal claims. But the Court cautioned that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139; 3A Moore's *Federal Practice* ¶ 18.-07[1.–3] at 18–59 (2d ed. 1982).

Accordingly, this Court, in its discretion, orders the pendent state claims dismissed for lack of a subsisting federal claim.

IT IS SO ORDERED.