**Robert WILSON and Clyde Wilson, Petitioners,**

v.

**TOWNSHIP OF MIDDLETOWN, SUSQUEHANNA COUNTY, PENNSYLVANIA, Respondent.**

**Civ. No. 84–1562.**

United States District Court, M.D. Pennsylvania.

Feb. 7, 1992.

Joseph P. Lenahan, Lenahan & Dempsey, Scranton, PA, Gerald J. Williams, Williams & Cuker, Philadelphia, PA, Mike Giangrieco, Montrose, PA, for respondent.

Myles R. Wren, Nogi, Appleton, Weinberger & Wren, P.C., Scranton, PA, for petitioners.

Brigid E. Carey, Thomas J. Foley, Jr., Scranton, PA, for intervenors.

## MEMORANDUM AND ORDER

CONABOY, Chief Judge.

This action was originally commenced by the filing of an equity lawsuit in state court, wherein the Township of Middletown sought to enjoin Robert Wilson and Clyde Wilson from operating a sanitary landfill within the boundaries of the township. The matter was removed to this Court and the said Robert Wilson and Clyde Wilson (for the purpose of this Memorandum referred to as the Plaintiffs) filed a counterclaim against the Township of Middletown (for the purpose of this Memorandum referred to as Defendant) alleging that the Township's ordinance was unconstitutional and that the Township's action against them caused them extensive damage and eventually resulted in the permanent closure of the landfill, all to the Wilsons' substantial economic loss.

The Township denies that the passage or enforcement of the ordinance resulted in any damages to the Wilsons and allege that it was the failure of the Wilsons to operate the landfill in the proper manner, which resulted in actions by the Department of Environmental Resources of the Commonwealth of Pennsylvania which, in turn, caused the closing of the landfill.

In a series of determinations by this Court the Township ordinance was declared unconstitutional and a motion for summary judgment filed by the Township was denied. The Court further ordered that the counterclaim of the Wilsons would proceed to a non jury trial. The Court further Ordered that the issue at trial would be "whether the Wilsons can prove they sustained any damage during the period from September 22, 1983 (the date on which the Environmental Hearing Board allowed the landfill to be opened) and May 1, 1985 (the date on which the Board closed the landfill) as a result of the Township's unlawful conduct."

The non jury trial was held and testimony presented by the parties on the issues stated. For the reasons which follow, we will deny recovery to the Wilsons under their counterclaim and enter a judgment in favor of the Township of Middletown.

## HISTORY

Clyde Wilson and Robert Wilson (hereinafter the Wilsons) were the owners of record of approximately 250 acres of land in the Township of Middletown, County of Susquehanna, Pennsylvania, during the time period relative to these proceedings. The Wilsons operated a landfill on the property commonly referred to as the Clymar Sanitary Landfill, and the Clymar Sanitary Landfill had been issued a permit for operation for solid waste disposal and/or processing facility by the Pennsylvania Department of Environmental Resources on January 5, 1976. In November of 1981 the Department of Environmental Resources issued a suspension order of the permit, finding a number of violations occurring in the operation of the landfill. After an appeal of that Order the Pennsylvania Environmental Hearing Board on or about September 22, 1983, restored the permit, subject to compliance with certain specific orders.

In January of 1984 Supervisors of Middletown Township passed an ordinance which would allow the regulation of commercial sanitary landfills in the Township. Prior to the passage of the ordinance a letter by counsel for the Wilsons was forwarded to the Board of Supervisors arguing or alleging that such an ordinance would be violative of the Wilsons' constitutional rights and "contrary to the preemptive powers of the Pennsylvania Department of Environmental Resources."

Following the enactment of the ordinance several criminal citations were sworn out against the Wilsons and several truckers who hauled refuse to the landfill. In addition, in October of 1984, the Township filed an action in equity in the Pennsylvania Court of Common Pleas (Susquehanna County) seeking to enjoin the operation of the landfill under the terms of the new ordinance. That action, to which the Wilsons responded with a counterclaim, was later removed to this Court and eventually resulted in the trial of the issues we consider here.

On May 1, 1985, the Pennsylvania Department of Environmental Resources issued a new suspension order stopping all operations at the Clymar Landfill, once again because of a series of alleged violations. The landfill did not reopen following the entry of that Order.

The Wilsons argue that the passage of the ordinance and the subsequent legal actions of the Borough against them and against several of their haulers resulted in their inability to produce sufficient money to comply with the requirements set by the Pennsylvania Department of Environmental Resources and, therefore, argue that the actions of the Township resulted in the loss of their business as a landfill. The Township, on the other hand, argues its actions in enacting the ordinance and issuing enforcement orders thereunder, played little or no role in the eventual loss of the Wilsons' business and argues instead that the Wilsons at all times failed totally to comply with the regulations of Pennsylvania Department of Environmental Resources and that it was the actions of that department of the State of Pennsylvania which caused the closure of the landfill and any subsequent loss of business.

### THE LAW

The Wilsons argue that the ordinance of September, 1984 was in violation of their due process rights, and further, "worked a taking of property by the economic hardship it inflicted thereon." They also argue that the actions of the Township were in violation of their various rights pursuant to Title 42 §§ 1981, 1982 and 1983 of the United States Code, that they were unjustly deprived of their rights, privileges, and immunities secured by the Constitution.

42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia, subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, sued in equity, or other proper proceeding for redress.

To state a cause of action under this Act a plaintiff must establish that the defendant, while acting under color of state law, deprived him of a protected civil or constitutional right. *Kohl Industrial Park v. County of Rockland*, 710 F.2d 895 (2d Cir.1983).

The Township concedes that by the enactment of the 1984 landfill ordinance the "color of state law" requirement of the foregoing statute is satisfied because the Township Board of Supervisors is indeed a local government unit to which Section 1983 applies. *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

A party seeking recovery under this statute, however, must go beyond the first element and prove that there was a deprivation of some constitutional right as a result of the conduct alleged. "Not every violation of a state constitutional, statutory

or common law right necessarily infringes federal constitutional rights." *Terrace Knolls v. Dalton, Dalton, Little and Newport, Inc.,* 571 F.Supp. 1086 (N.D.Ohio 1983); *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944).

In order to recover under this prong of its case, therefore, the Wilsons had the obligation not only to prove that the Township acted under color of law, but more importantly, in addition, that the actions of the Township actually resulted in some deprivation of the Wilsons' constitutional rights.

■ Both parties have called our attention to this Court's decision concerning the issue of a "taking" without due process under the United States Constitution. In *Edelweiss Development Corporation v. County of Susquehanna,* 738 F.Supp. 879 (M.D.Pa.1988), affirmed, 908 F.2d 962 (3d Cir.1990) the Court held that:

> Although the Third Circuit has found that there is no precise formula for identifying a taking, there are several factors that have proven relevant; the public purpose for the enactment of the disputed regulation; the type of governmental interference; the diminution in property value; and the extent of interference with reasonable, distinct, investment backed expectations.
>
> It is clear, however, that Governmental regulations must interfere drastically with a property's possible uses in order to be a taking. *Pace Resources, Inc. v. Shrewsbury Township,* 808 F.2d 1023 (3d Cir.1987).

Again, in *Terrace Knolls v. Dalton, Dalton, Little and Newport, Inc.,* supra, it was held:

> ... a plaintiff must allege a drastic degree of "diminution of value" in order to state a viable taking's cause of action. In zoning cases, public action has only been deemed a taking if it deprived an owner of all "economically viable use of his property. Neither deprivation of the most beneficial use of the land, nor a severe decrease in the value of the property, measures up to an unlawful taking."

We consider the testimony evidence and arguments made in this case within the parameters of these legal guidelines.

## THE TESTIMONY

■ Santifer Wilson, the wife of Clyde Wilson, testified concerning the books and records of the landfill. She testified that although the landfill was approved to open in September of 1983, they did not open until December 24, 1983 because they were unable to secure bonding until that time. She testified that the Township ordinance was originally advertised in January of 1984 and was passed in September of 1984. She testified further that the first citations against the landfill were issued in October of 1984 and several times thereafter. She testified she was aware that one or more of the Township Supervisors on several occasions stated that they would see to it that a landfill would never be opened in their community. She testified further that there never were any hearings on the citations issued because her husband suffered a stroke and the hearings had to be continued. She testified as to three other incidents which she said interfered with the operation of the landfill and attributed the activities to officials of the Township. One was a blocking of the entrance to the landfill which required her husband to threaten to move certain vehicles with a bulldozer before they were moved. Second, was the stopping of a trucker who was hauling refuse to the landfill and indicating to him that he should discontinue the hauling. And, the third was the parking of vehicles near the entrance which could have been taken for a blocking of the entrance. She states further that business at the landfill dropped off after the ordinance and announced some figures including business of approximately $8,000 during August and September of 1984 and approximately $6,000 during the months of January and February, 1985. She stated that the operators of the landfill were trying to comport with the directions of the Department of the Environmental Resources by "doing things as we got the money". She stated that the opening order required them to

assure that there was adequate ground water monitoring, that there was a leachate collection plan and plant, and that there was additional ground cover over all of the refuse that had been deposited in the landfill and that they were unable to accomplish all these things at the same time because of lack of money. She stated therefore that it was their plan to continue to make these improvements as the money was received from customers at the landfill.

She testified further that business continued to decline and when they were ordered closed again on May 1, 1985, because of failure to comply with the orders of the Department of Environmental Resources, the landfill never reopened and eventually filed for bankruptcy in August of 1985.

On cross examination she testified about the assessment of penalties against the landfill by the Department of Environmental Resources for continued alleged violations of their orders and regulations and stated that it was impossible to do what the Department of Environmental Resources wanted done, especially in the winter. She explained this by pointing out that the landfill was on a mountainside and that it was very difficult to move land for coverage of the refuse dumped there, particularly during the cold season. Her ultimate explanation for the failure of the landfill to correct the deficits assigned by the Department of Environmental Resources was their lack of money with the underlying explanation that if they were allowed to continue to do business and if they accumulated enough business they would, in turn, try to comport with the regulations.

Larry Holgate testified that he was in the refuse business with his brother and that in 1983 he purchased a line from another person who was dumping at the Clymar Landfill and he continued to dump there for some time. He testified during 1984 he would average approximately 3 or 4 trucks a week to the landfill. He testified he had received several calls from people allegedly associated with the Township telling him he should not continue to deliver to the landfill under threat of receiving citations for doing so. He testified further that he did in fact receive a number of citations and after paying about $400 in fines discontinued his trips to the landfill.

The testimony of Ronald Brown, James Rought, and Al Noble indicated they were also in the refuse hauling business and did some hauling to the Clymar Landfill in 1984 and that each of them discontinued hauling there after being warned they could receive citations or after receiving citations pursuant to the Borough Ordinance.

The final witness for the Wilsons was an environmental engineer who explained that he estimated the amount of "air space" available at the Clymar Landfill which he felt could accept waste and in addition estimated the value for that space. Although he testified there was an estimated $12 Million dollars worth of area remaining to be used, he acknowledged under cross examination that this area included large sections which had never been approved by the DER for use as a landfill. His testimony largely amounted to a measurement of the space owned by the Wilsons and mathematical calculations to determine the number of cubic yards of available space to be filled by refuse if the entire area was open for licensed use by the Department of Environmental Resources. The testimony did not comport with the actual allowable use of the land and thus was in large part irrelevant on the issue of damages.

In presenting their side of the case the Defendant called an employee of the Department of Environmental Resources, who as a compliance expert, was the field inspector for the Clymar Landfill from January of 1984 to May of 1985. He testified that after the landfill opened in the latter part of 1983, he inspected it approximately every two months and was familiar with the conditions for continued operation as set forth by the Department of Environmental Resources. He testified that through a series of letters and conferences he tried to get the various items taken care of by the owners but frustration set in because of their failure to cooperate and that only threats to close the landfill

brought about any effort at compliance with the regulations. He testified that he received complaints from various towns-people and Township officials, but that none of the officials, including the Defendant, ever asked him to shut down the landfill.

He did state that there were leachate problems continuing at the landfill through 1984 and while the Wilsons placed some cover over the leachate, there was no leachate plan nor was there any leachate plant installed. He testified further about continued problems, such as the failure to complete a two-foot vegetative soil cap, which had been one of the basic requirements of the landfill's continued operation.

John Guiton testified that he was a supervisor during the period of 1983, 1984, and 1985. He denied that the Township ever posted any signs which were designed to prevent trucks from traveling to the landfill, but did admit that at times their officials disallowed trucks which exceeded the capacity specified by the State on various roads within the Township. He did admit that he was a neighbor of the landfill and that the landfill had hurt his own farming business, but denied he had ever made any campaign promises or public statements that he would close the landfill at all costs. He did admit that as a public official he complained to the Department of Environmental Resources about the improper operation of the landfill.

He acknowledged that after the DER permitted the reopening of the landfill in 1983, he introduced the ordinance which was passed in 1984 and that he signed the citations against various persons because they had failed to apply for licenses as required by the ordinance. He denied that Township vehicles ever blocked the roadway or the entrance to the landfill although he stated that on occasion, as officials, they went to see if there was any improper conduct going on in and around the roadway and the entrance to the landfill.

The testimony, even considered in the most favorable light to the Wilsons, falls far short of sustaining their allegations that the passage of the ordinance and the Township's conduct thereunder caused them a deprivation of their land or resulted in extensive financial damage to them that resulted in the permanent closure of their landfill. When one considers the entire record in this case one must conclude that the problems of the Wilsons in substantial part, resulted from their failure to comply with the regulations of the State of Pennsylvania with regard to the operation of landfills. There was a constant violation of State regulations and orders of the Department of Environmental Resources and constant tension between these parties as a result of the Wilsons' own conduct. Even if one were to acknowledge that the actions of the Township and Township officials had some impact on the operation of the landfill and even if one were to acknowledge it was improper or in violation of the law, that impact was at best minimal and certainly in no way brought about the results of which the Wilsons complain.

A thorough review of the facts in this case, the testimony and the evidence produced at the hearing, and giving due regard to the arguments of counsel, leads to the inescapable conclusion that the Plaintiffs have failed to sustain their burden of proving by the fair weight and preponderance of the evidence that the Township's actions caused the damages of which they complain. Rather, it is plainly evident that the Wilsons never complied with the restraints and regulations imposed generally on landfills by the Commonwealth of Pennsylvania and with the directives specifically issued against their landfill by the Department of Environmental Resources. It was the Wilsons' expressed desire (and determination) to operate the landfill in disregard of the law and regulations until they "made enough money" to operate properly. This hardly establishes a cause of action against the Defendant. It was their own deliberate failure to comport with those orders and directives of the Department of Environmental Resources that directly caused the closing of the landfill and, thus, there is no responsibility or liability on the part of the Township.

## CONCLUSIONS OF LAW

Based on the foregoing, we make the following conclusions of law.

The counterclaim Plaintiffs Robert Wilson and Clyde Wilson have failed to sustain their burden of proving by the fair weight and the preponderance of the evidence that the ordinances or actions of the Township officials amounted to an illegal taking of their property.

The counterclaim Plaintiffs Robert Wilson and Clyde Wilson have failed to prove by the fair weight and preponderance of the evidence that the ordinance or actions of the Township officials violated their Constitutional rights to due process.

The counterclaim Plaintiffs Robert Wilson and Clyde Wilson have failed to prove by the fair weight and preponderance of the evidence that the ordinance or actions of the Township officials violated any of their rights pursuant to Title 42, Sections 1981, 1982 and 1983 of the United States Code.

The counterclaim Plaintiffs Robert Wilson and Clyde Wilson have failed to sustain their burden of proving that they sustained any damage during the period from September 22, 1983 (the date on which the Environmental Hearing Board allowed the landfill to be opened) and May 1, 1985 (the date on which the Board closed the landfill) as a result of the Township's unlawful conduct.

Under the circumstances, a judgment will be entered in favor of the Defendant.